# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROGER MOORE,
    **Plaintiff,**

v.                                                                               Civil Action No. 5:13-cv-130

LT. SHAW,
    **Defendant.**

## REPORT AND RECOMMENDATION

On September 19, 2013, *pro se* Plaintiff Roger Moore ("Plaintiff") filed a Complaint pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). (Docket No. 1.) Along with his Complaint, Plaintiff filed an application to proceed *in forma pauperis* ("IFP"), a Consent to Collection of Fees from Trust Account, and his Prisoner Trust Account Statement with attached ledger sheets. (Docket Nos. 2, 3, and 4.) The undersigned granted Plaintiff's motion to proceed IFP on October 1, 2013. (Docket No. 7.)

Plaintiff filed a motion for summary judgment on June 27, 2014. (Docket No. 13.) The undersigned denied that motion on August 7, 2014. (Docket No. 14.) That same day, the undersigned entered an Order directing Defendant to respond to Plaintiff's Complaint. (Docket No. 15.) After receiving an extension of time, Defendant filed a "Motion to Dismiss or for Summary Judgment" and memorandum in support on November 10, 2014. (Docket Nos. 32 and 33.) Plaintiff filed a response on December 11, 2014. (Docket No. 36.)

## I.   Contentions of the Parties

### A.   *Plaintiff's Complaint*

In his Complaint, Plaintiff states that on or about July 12, 2013[1], around 3:00 a.m., while

---

[1] The seizure actually occurred on July 7, 2013. (Docket No. 33-2 at 18.)

incarcerated at FCI Morgantown in Morgantown, West Virginia[2], he suffered a "severe life threatening epileptic seizure" that was witnessed by his cell mates. (Docket No. 1 at 5-6.) Plaintiff alleges that twenty (20) to thirty (30) minutes later, Defendant appeared on the scene and witnessed inmates attempting to revive him. According to Plaintiff, Defendant "shone his flashlight in [his] eyes and called his name." (Id. at 7.) Three other officers arrived and "did nothing." (Id.) Plaintiff alleges that no medical car was offered to him. (Id.) According to Plaintiff, Defendant violated his Eighth Amendment rights by being deliberately indifferent to his medical needs because Plaintiff had experienced seizures before on Defendant's "watch." (Id.) Plaintiff asserts that because of Defendant's actions, he has suffered "trauma, post effect, fear of going to asleep [sic], afraid he will not get need [sic] emergency assistance, and thereby he would die." (Id. at 8.) For relief, Plaintiff requests $200,000.00 for his injuries and $800,000.00 for punitive damages. (Id. at 11.)

**B.    *Defendants' Motion to Dismiss or for Summary Judgment***

In support of his motion, Defendant raises the following arguments:

1. Plaintiff has failed to establish deliberate indifference to a serious medical need;

2. Plaintiff's claim against Defendant Shaw should be dismissed because he is entitled to qualified immunity; and

3. Plaintiff's claims should be dismissed for failure to exhaust his administrative remedies prior to filing his complaint.

(Docket No. 33 at 7-14.)

**C.    *Plaintiff's Response***

In his response, Plaintiff alleges that Defendant's account that "Plaintiff was found on the

---

[2] Plaintiff is presently incarcerated at FCI Oxford in Oxford, Wisconsin.

floor and alert and without injury, is directly contracted by an inmate who was an eyewitness to the events Lt. Shaw alleges took place." (Docket No. 36 at 2.) He has attached a signed, unsworn statement purportedly written by inmate William Campshure, who allegedly was an eyewitness to the events of July 7, 2013. (Docket No. 36-1.) Plaintiff also asserts that Defendant is not entitled to qualified immunity. (Docket No. 36 at 3-5.) Finally, Plaintiff claims that he has exhausted his administrative remedies. (Id. at 5-6.) In support, he has attached two copies of administrative remedies. (Docket No. 36-2.)

## II. Standards of Review

### A. *Motion to Dismiss*

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complain is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the Supreme Court noted that a complaint need not assert

3

"detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable," id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court, which has held that a "claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### B. *Motion for Summary Judgment*

A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). In applying the standard for summary judgment, a court must review all evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence

or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . .must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

### III. Analysis

*A.* *Exhaustion of Administrative Remedies*

A Bivens action, like an action under 42 U.S.C. § 1983, is subject to exhaustion of

5

administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Porter v. Nussle, 534 U.S. 516, 524 (2002). Under the PLRA, a prisoner bringing an action with respect to prison conditions under Bivens, § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion as provided in § 1997e(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to filing suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 93-94 (2006), the Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, the PLRA exhaustion requirement requires *full* and *proper* exhaustion. Id. at 92. Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 103.

The Bureau of Prisons ("BOP") provides a four-step administrative remedy process beginning with attempted resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9) within twenty (20) calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within twenty (20)

---

[3] Porter, 534 U.S. at 524.

calendar days of the warden's response. Finally, if the prisoner has not received any satisfaction, he may appeal to the Office of the General Counsel (BP-11) within thirty (30) calendar days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F. Supp. 941, 943 (D. Md. 1997).

Here, the actions of Defendant "regarding improper medical care constitute actions 'with respect to prison conditions' within the meaning of the PLRA, and the requirement of exhaustion of administrative remedies applies to those actions and the alleged effects of those actions." Collins v. Weaver, No, 3:12-CV-74, 2013 WL 4008710, at *6 (N.D. W. Va. Aug. 5, 2013). In his Complaint, Plaintiff states that "at first [he] did not exhaust admin. remedy, but, later did so, even though I new [sic] it would be waste of time." (Docket No. 1 at 7.) He alleges that he filed his grievance regarding Defendant at all levels but never received responses. (Id. at 3, 10.)

The Government has attached to its memorandum a declaration from Howard Williams, Legal Assistant at the Bureau of Prisons' Mid-Atlantic Regional Office. As a Legal Assistant and Administrative Remedy Clerk, Mr. Williams is "responsible for reviewing administrative remedy appeals received at the Mid-Atlantic Regional Office and assisting in determining whether they have been properly submitted." (Docket No. 33-3 at 2.) He also provides "technical support to institution staff involved in the processing of administrative remedies at the institution level." (Id.) Mr. Williams reviewed SENTRY, the Bureau of Prisons' computerized records, and determined that, as of October 21, 2014, Plaintiff had filed two (2) administrative remedy submissions since coming into custody. (Id. at 2-3.) Both submissions requested transfer to a facility closer to his home; neither of those submissions alleged any misconduct on the part of Defendant. (Id. at 3, 6.)

7

In response, Plaintiff alleges "that with regard to Lt. Shaw's conduct, Plaintiff Moore filed a BP9, BP10, and BP11, which were not answered and were not returned to him." (Docket No. 36 at 5.) He attached copies of two (2) administrative remedies "as proof that not all administrative remedies are on file on the SENTRY system." (Id. at 6.) One of those remedies is dated May 10, 2005, and is on an "Informal Resolution Form." (Docket No. 36-2 at 1.) In that remedy, Plaintiff requested to be transferred to either FPC Oxford or FPC Duluth. (Id.) The other is dated July 29, 2014, and is on an "Inmate Request to Staff" form. (Id. at 2.) In that remedy, Plaintiff again requested to be transferred closer to home. (Id.)

Generally, unsworn statements, without more, are not admissible on summary judgment to contradict sworn affidavits and declarations. See Edens v. Kennedy, 112 F. App'x 870, 877 (4th Cir. 2004). Accordingly, balancing Plaintiff's allegations against the sworn declaration provided by Mr. Williams, the undersigned gives no credible weight to Plaintiff's statements.

Furthermore, the undersigned notes that remedies "are processed through a three-level system. First is the institution level, where remedy numbers are identified by an 'F.' . . . Second, the Regional Office level, identified by an 'R.' . . . Third, the Central Office level, identified by an 'A.'" Johnson v. Taylor, No. 7:08cv00022, 2009 WL 691207, at *3 n.8 (W.D. Va. Mar. 16, 2009). "If an administrative remedy is rejected, a copy is not retained by the Bureau of Prisons. Rather, the SENTRY records reflect that the remedy was filed and rejected, and log the reason for the rejection as well as the date of filing." Id. at *2 n.7. Given this, the undersigned finds that the two remedies that Plaintiff has attached to his response do not appear in SENTRY because they were requests for informal resolution that would have occurred prior to the institution level. Accordingly, if Plaintiff had exhausted his administrative remedies as to his allegations of misconduct on the part of

8

Defendant, such would have been reflected on the SENTRY report attached to Mr. Williams' declaration. Given this, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies as to his claim against Defendant. Nevertheless, even if the Court were to find that Plaintiff had exhausted his administrative remedies, dismissal of Plaintiff's Complaint would still be appropriate.

B.     *Eighth Amendment Claim of Deliberate Indifference to Medical Needs*

To state a claim under the Eighth Amendment for ineffective medical assistance, a plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Muncipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The subjective component of an Eighth Amendment claim for ineffective medical assistance is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

9

inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

The record contains a signed declaration from James Thomas, the Health Services Administrator at FCI Morgantown. According to Mr. Thomas, Plaintiff had a history of seizures prior to coming into the Bureau of Prisons' custody. (Docket No. 33-2 at 3.) He was prescribed Dilantin "to keep seizure activity as a minimum." (Id.) However, in June 2013, Plaintiff told medical staff at FCI Morgantown that he had not experienced a seizure in "years." (Id.; see also id. at 23.) In June 2013, Plaintiff's Dilantin prescription was discontinued because his Dilantin levels had been "markedly subtherapeutic." (Id. at 23.)

The record also contains a signed declaration from Defendant Lieutenant James Shaw, the Lieutenant on duty the night of July 7, 2013, when Plaintiff experienced a seizure. Defendant responded to Plaintiff's unit after receiving an alert regarding a medical emergency. (Docket No. 33-1 at 3.) When Defendant and other staff arrived, Plaintiff was unresponsive on the floor. (Id.) However, Defendant observed Plaintiff begin to regain consciousness. (Id.) Plaintiff did not tell Defendant that he had suffered any injuries as a result of the seizure. (Id.) Defendant called the on-call physician's assistant to provide information about Plaintiff's seizure and his current condition. (Id.) The physician's assistant instructed Plaintiff to report to Health Services at 6:00 a.m. the following morning. (Id.) Defendant recorded the incident in the Lieutenant's Log for July 7, 2013. (Id.; see also id. at 15.) Plaintiff did not tell Defendant that he required immediate medical attention, and Defendant did not observe any injuries on Plaintiff. (Id.) Defendant relied upon the assessment of the physician's assistant that Plaintiff was stable enough to report to Health Services in the

10

morning because Defendant is not trained to assess medical conditions or provide medical treatment (Id. at 3-4.)

Plaintiff was seen in Health Services on July 7, 2013, at 10:29 a.m. (Docket No. 33-2 at 3, 18.) He told Registered Nurse Jennifer Underwood that he had suffered a seizure the night before. (Id. at 18.) Plaintiff reported that he became incontinent during the seizure and had a headache in the morning. (Id.) RN Underwood noted that Plaintiff had some bruising on the tip of his tongue. (Id. at 19.) She prescribed Plaintiff 800 mg of Ibuprofen to treat his headache and instructed to return as needed. (Id.) Plaintiff returned to Health Services on July 8, 2013 at 7:29 a.m. (Id. at 12.) At that time, he reported that he currently felt "well" and denied "HA, confusion, localized weakness." (Id.)

To refute Defendant's evidence, Plaintiff attached a statement from inmate William Campshure to his response. In that statement, Campshure states that on the night of July 7, 2013, he was in the bunk above Plaintiff's at FCI Morgantown. (Docket No. 36-1 at 1.) When Defendant arrived, he asked Campshure to step away from the cube area. (Id.) Campshure observed that the officers had "no success" in reviving Plaintiff. (Id.) When he returned to the cube area, Campshure saw that Plaintiff was lying on his bunk and that staff had covered him with a blanket. (Id.) Campshure states that Plaintiff was never lying on the floor or awakened by staff; instead, he was in a "deep sleep." (Id.) The next morning, Plaintiff asked Campshure what had happened, and Campshure told him. (Id. at 2.)

The undersigned notes that the statement purportedly written by Campshure is unsworn. Again, generally, unsworn statements, without more, are not admissible on summary judgment to contradict sworn affidavits and declarations. See Edens, 112 F. App'x at 877. Accordingly,

11

balancing the statement provided by Plaintiff against the sworn declarations provided by Defendant and Mr. Thomas, the undersigned gives no credible weightbe to the statement provided by Plaintiff.

Based upon the declarations of Defendant and Mr. Thomas, there is no evidence that Defendant was deliberately indifferent to Plaintiff's medical needs. The Fourth Circuit has held that non-medical personnel may rely on the opinions of medical staff regarding the proper treatment of inmates. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), overruled in part on other grounds by Farmer v. Brennan, 511 U.S. 825, 837 (1994). Accordingly, Defendant could rely on the opinion provided by the on-call physician's assistant that Plaintiff did not need immediate medical treatment and rather could respond to Health Services when it opened at 6:00 a.m. Consequently, the undersigned finds that Plaintiff has failed to state a deliberate indifference claim against Defendant with respect to his medical care.

## IV.   Recommendation

For the foregoing reasons, the undersigned recommends that Defendant's "Motion to Dismiss or For Summary Judgment" (Docket No. 32) be **GRANTED** and that Plaintiff's Complaint (Docket No. 1) be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C.

§ 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to all counsel of record via electronic means and to mail a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested.

DATED: December 31, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE